## COUNTY OF BEXAR v. WALTER TYNAN ET AL.

No. 6749.   Decided November 4, 1936.
(97 S. W., 2d Series, 467.)

*Russell B. Wine,* of San Antonio, for plaintiff in error.

The act under consideration is a general law, and is constitutional, because it relates to persons and things of a class, and not to particular persons or things in a class. The method of classification is not arbitrary but is just and proper, being within the limits of the class conformable to the "last preceeding" Federal census. Clark v. Finley, 93 Texas, 171, 178, 54 S. W., 343; Harwood v. Wentworth, 162 U. S., 547, 40 L. Ed., 1069, 16 Sup. Ct., 890; Smith v. State, 49 S. W. (2d) 739.

*Leonard Brown,* of San Antonio, for defendants in error.

The act in question is void, being a local law and applying only to Bexar County, although it is in the form of a general law. Duclos v. Harris County, 263 S. W., 562; Altgelt v. Gutziet, 109 Texas, 123, 201 S. W., 400; Ward v. Harris County, 209 S. W., 792; Bell County v. Hall, 105 Texas, 558, 153 S. W., 121.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Prior to April 3, 1933, the various county and precinct officers of Bexar County, Texas, were being paid compensation from fees of office in accordance with the prevailing general laws of the State. On the date mentioned the Legislature passed House Bill 490 (Acts of 1933, 42nd Leg., Chap. 60, p. 128), which became effective immediately. This bill provided that in counties in which the population was as much as 290,000 and less than 310,000, according to the last preceding Federal census, the precinct and county officers should retain from fees of office certain named amounts, the result being that in such counties the retained compensation was greatly reduced from what was allowed by the prior laws.

After the enactment of House Bill 490, the officers of Bexar County continued to retain fees under prior statutes and declined to be governed by the Act of April 3, 1933. This suit was brought by Bexar County against the officers and was brought for the purpose of requiring said officers to account for fees under the new Act and not under previously existing laws. The case was submitted upon the following agreement:

"It is agreed that on the date of the filing of this suit that the defendants were the duly elected and qualified office holders

of Bexar County, holding the respective offices as set out in said plaintiff's petition. That during the fiscal year 1933, beginning the 1st day of January, 1933, to the 31st day of December, 1933, that all of said defendants have collected certain fees of office and that they expect to make due reports of such fees on or before the 1st day of March, 1934, as required by law, and that all of said officers expect to retain from said fees a salary and compensation allowed them under the statutes in force prior to the adoption of House Bill 490, Chapter 60, passed at the Regular Session of the 43rd Legislature, and that they do not expect to comply with said law in making their reports or in deducting from their said fees and compensation to which they are entitled to, and that from their said fees of office the County of Bexar will be entitled to all excess fees over and above the compensation allowed them by law.

"It is further agreed that House Bill No. 490, passed at the regular session of the 43rd Legislature, was introduced into the Legislature by P. L. Anderson, a Representative from Bexar County, and that said Act, according to its terms, applies only to counties in which the population is as many as Two Hundred Ninety Thousand (290,000) or less than Three Hundred Ten Thousand (310,000) inhabitants, according to the last preceding Federal census, and that according to the 1930 census, which is the last preceding Federal census, the population of Bexar County was Two Hundred Ninety-two Thousand Five Hundred and Thirty-three (292,533), the population of Harris County was Three Hundred Fifty-nine Thousand Three Hundred and Twenty-six (359,326), the population of Dallas County was Three Hundred Twenty-Five Thousand Seven Hundred and Ninety-one (325,791), and the population of Tarrant County was One Hundred Ninety-Seven Thousand Five Hundred and Fifty-three ($197,553), and that Bexar County was the only County in the State with a population between Two Hundred Ninety Thousand (290,000) and less than Three Hundred Ten Thousand (310,000) inhabitants, according to the last preceding Federal census, and that said Act would apply only to Bexar County and no other county in the State. It is further agreed that no notice of an intention to apply for said Act was published in Bexar County, Texas, and that said Act was passed without any notice of any kind being given."

The trial court held that House Bill 490 was unconstitutional and void on the ground that it was a special or local law in contravention of Article 3, Sections 56 and 57 of the Con-

stitution. This holding was affirmed by the Court of Civil Appeals. 69 S. W. (2d) 193.

The provisions of the Constitution applicable are as follows:

"Sec. 56. The Legislature shall not, except as otherwise providing in this Constitution, pass any local or special law, authorizing:

\* \* \*

"Regulating the affairs of counties, cities, towns, wards or school districts; \* \* \*

"Regulating the fees, or extending the powers and duties of aldermen, justices of the peace, magistrates or constables. \* \* \*

"Sec. 57. No local or special law shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill and in the manner to be provided by law. The evidence of such notice having been published, shall be exhibited in the Legislature, before such act shall be passed."

■ In the case of Altgelt v. Gutzeit, 109 Texas, 123, the Supreme Court held that an act fixing salaries of county commissioners was an act "regulating the affairs of counties" within the purview of the Constitution, and an attempt to do so by local or special law was void.

■ Without going into a detailed discussion of the Act of April 3, 1933, we will state that on its face it purports to be a general law, and we hold that because it may have applied to only one county in the State at the time of its passage, this did not alone make it a special or local law, in view of the fact that it was not so framed as to exclude the probability that it would apply to other counties in the future. The Legislature may, upon a proper and reasonable classification, enact a general law which at the time of its enactment in applicable to only one county; provided its application is not so inflexibly fixed as to prevent it ever being applicable to other counties. City of Ft. Worth v. Bobbitt, 121 Texas, 14, 36 S. W. (2d) 470, and 41 S. W. (2d) 228.

While the terms of the Act in question strongly suggest that it was made in view of prevailing conditions, and could not become applicable to other counties in the future, yet we re-

solve the doubt upon this point in favor of the validity of the Act.

■ Notwithstanding it is true that the Legislature may classify counties upon a basis of population for the purpose of fixing compensation of county and precinct officers, yet in doing so the classification must be based upon a real distinction, and must not be arbitrary or a device to give what is in substance a local or special law the form of a general law. It is well recognized that "in determining whether a law is public, general, special or local the courts will look to its substance and practical operation rather than to its title, form and phraseology, because otherwise prohibitions of the fundamental law against special legislation would be nugatory." 25 R. C. L., 815, and authorities cited. We need not go into a lengthy discussion of what is a proper basis of classification in a matter of this kind. It is more appropriate to state in general terms what must be present to justify the placing of one county in a very limited and restricted classification, as in this instance. This has been concisely stated in numerous cases in language quoted with approval in the case of Leonard v. Road Maintenance District No. 1, 187 Ark., 599, 61 S. W. (2d) 70, by the Supreme Court of Arkansas.

"The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained. There must be something * * * which in some reasonable degree accounts for the division into classes."

When we look to the practical operation of the Act in question we are led to the conclusion that the attempted classification is unreasonable and arbitrary to such degree as to indicate beyond doubt that the purpose of the Legislature was to single out one county and to attempt to legislate upon the question of the compensation of its officers, and not upon the subject generally, and therefore the Act was void as being a special law.

At the time of the enactment of this bill Bexar County officers were receiving compensation in accordance with the general law. This law was House Bill No. 9, effective January 1, 1931, and known as Chapter 20 of the Acts of the Fourth Called Session of the Forty-first Legislature. This act provided

that in counties of a population in excess of 150,000 practically all county and precinct officers might retain fees of office sufficient to make their maximum compensation $12,500 per year. In counties of 75,000 population and less than 150,000 they might retain a maximum compensation not exceeding $8000 per year. In counties of 37,500 population and less than 75,000 they might retain a maximum compensation of $5500 per year. Under the Act in question the maximum compensation of all officers of Bexar County was reduced below the maximum allowed like officers in counties of 37,500 population, and was only a small amount in excess of the maximum allowed in counties of 25,000. The compensation under this Act was less than one half the maximum compensation allowed in other counties of more than 150,000 population, and was about $3000 per year less than the maximum compensation allowed like officers in counties having a population in excess of 75,000 and less than 150,000.

In the case of Clark v. Finley, 93 Texas, 171, 54 S. W., 343, this Court recognized that substantial differences in populations of counties could be made a basis of legislation fixing compensation of officers, on the theory, as the court clearly recognized, that the work devolving upon an officer was in some degree proportionate to the population of the county. This has frequently been recognized by courts as creating a sufficient distinction to justify a larger compensation for county officers in counties having a large population as compared with compensation to like officers in counties having a small population. Conversely, we think it true that if the Legislature ignores the obvious fact that the work of county officers is proportionate to population and classifies counties in such way that the compensation of officers of a county having a large population is fixed far below the compensation allowed like officers in small counties, such action amounts to fixing a classification which is arbitrary and which has no true relevancy to the purpose of the legislation. We think that it necessarily follows from all the circumstances that the Legislature intended to single out Bexar County as being the only county intended to be affected by the legislation, and the Act was undoubtedly a special law. Smith v. State, 120 Texas Crim. Rep., 431, 49 S. W. (2d) 739, 743; Harbert v. Mabry, 166 Tenn., 290, 61 S. W. (2d) 652; Colley v. Jasper County, 337 Mo., 503, 85 S. W. (2d) 57; Leonard v. Road Maintenance District No. 1, 187 Ark., 599, 61 S. W. (2d) 70; State v. Stewart, 147 Tenn., 375, 247 S. W., 984;

James v. Barry, 138 Ky., 656, 128 S. W., 1070; Latham v. Hawkins, 121 Fla., 324, 163 So., 709.

There are many things connected with the history of this bill in the Legislature which convincingly indicate that the House and Senate regarded it as purely a local bill, but we do not deem it necessary to enumerate them here.

For the reasons stated, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court November 4, 1936.